MOORE, J.
| Mason Sibert appeals a summary judgment which found that one of the defendants, general contractor HDR Constructors, was his statutory employer and thus immune from tort liability for his work-related injury. We affirm.

Factual and Procedural Background

On February 2, 2011, Heckmann Water Resources Corp., as owner, executed a work agreement (“general contract”) with HDR Constructors, as contractor, to design and replace certain portions of Heck-mann’s fluids pipeline in DeSoto Parish. On May 2, 2011, HDR executed a subcontract agreement with Wicker Construction Inc., as subcontractor, to perform a specified portion of the work of the general contract. Both contracts provided for change orders and a one-year warranty against defects in the work. Wicker com *286 pleted its work under the subcontract agreement by September 2011.
In November 2011, a leak occurred in the pipeline. Heckmann (through its director, Phil Martel) called on HDR to repair it; HDR called on Wicker to perform the actual repairs; National Oilwell Vareo (through its field services rep, Randy Petty) delivered pipeline and other equipment to the site. Sibert and two other Wicker employees cut the leaking pipe and removed it by hand. According to Sibert’s petition, Petty told him not to bend the pipe, but one of HDR’s employees, Ray Richards, told him to bend it and that HDR would “stand behind” Wicker’s work even if it was against manufacturer’s instructions, and then Petty told Sibert to heat the socket with a torch. Sibert did so, but flammable gases in the pipe ignited into a fireball, engulfing Sibert and seriously injuring him.
pin June 2012, Sibert and his wife filed this tort suit against National and its employee Petty, Heckmann and its director, Martel, and HDR (referred to in the petition as HDR Engineering, not HDR Constructors ). He alleged that all defendants were negligent for failing to ascertain that the contents of the pipeline were combustible, instructing him to use a torch, requiring repairs inconsistent with manufacturer’s instructions, and failing to advise Wicker of alternative repair options. He also alleged that all defendants were solidarity liable.
Several defendants answered with general denials and requested a jury trial. Various incidental demands ensued, but they are not germane to this appeal.
HDR (asserting that it was actually HDR Constructors, not HDR Engineering ) answered that it was Sibert’s statutory employer under La. R.S. 23:1032 and 23:1061, and that all defendants’ liability was joint and severable under La. C.C. arts. 2223 and 2324.
In November 2012, HDR filed this motion for summary judgment, asserting that as Sibert’s statutory employer under R.S. 23:1061 A(2), it was entitled to tort immunity under R.S. 23:1032 A(2). It argued that a general contractor is normally immune from tort claims by a subcontractor’s employee injured on the job, citing Bradford v. Village Ins. Co., 548 So.2d 106 (La.App. 2 Cir.), writ denied, 552 So.2d 396 (La.1989), and other cases.
Sibert filed two unopposed motions to continue, and then, in February 2013, a first supplemental and amending petition. This alleged that HDR, Heckmann and their personnel knew that the pipeline contained not only saltwater but dangerous substances such as natural gas and flammable | ¡¡drilling fluids, that a fireball and explosion were “substantially certain” to result if a blowtorch were used, and their acts were “done with full knowledge and conscious indifference” to Sibert’s safety. He also opposed HDR’s motion for summary judgment, as discovery was in its “initial stages,” the subcontract excluded workers’ compensation coverage, and HDR still might be liable because of defective engineering work. In support, he attached 82 pages of documents, notably HDR’s accident report stating that Wicker’s employees decided to use the blowtorch, but they had been working for over 16 hours straight and Heckmann was on the site “pushing] for productivity.” Si-bert followed this with a motion (not unopposed) to continue and a motion to compel HDR to designate an Art. 1442 representative. Hearing on the rules was set for March 4, 2013.
HDR responded that the motion for summary judgment was not premature, as the only issue was whether the general contract and subcontract created statutory *287 employer immunity. Also, Wicker was honoring its warranty when the accident occurred, and Wicker’s waiver of workers’ compensation coverage did not affect HDR’s statutory employer status. Answering Sibert’s first supplemental and amending petition, HDR alleged that it performed no acts that were substantially certain to result in Sibert’s injuries, and under the subcontract, Wicker was solely responsible for its employees’ safety.

Action of the District Court

At the hearing on March 4, 2013, counsel for HDR stated that she had given Sibert over 6,000 pages of documents in response to discovery, but argued that only the general contract and subcontract were necessary to |4determine statutory employment. Noting that the accident had occurred over a year earlier and the motion for summary judgment had been pending since November 2012, the district court denied Sibert’s motion to continue. On the merits, Si-bert’s counsel reiterated that they had received 6,300 pages of discovery matter only about a month earlier, and the court took the matter under advisement.
On April 8, 2013, the court rendered written reasons finding that HDR was Si-bert’s statutory employer under the two-contract theory, and thus immune from tort suit. Sibert took this devolutive appeal.
After the court rendered summary judgment, Sibert sought leave of court to file a second supplemental and amending petition, alleging that both HDR Constructors and HDR Engineering worked on the project, joining the latter as defendant, and expanding the allegations of intentional tort. The court granted this request on May 9, a month after it dismissed HDR Contractors from the suit.

Burden of Proof and Standard of Review

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 2010-0343 (La.1/19/11), 57 So.3d 1002, and citations therein. Summary judgment shall be granted if the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. The burden of proof is on the mover. However, if the mover will not bear the burden of proof at trial on the matter that is before |sthe court on the motion for summary judgment, the mover need not negate all essential elements of the opponent’s claim, but rather “point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim * * *. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” La. C.C.P. art. 966 C(2). In other words, once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Schultz v. Guoth, supra; Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880.
Appellate courts review motions for summary judgment de novo, using the-same criteria that govern the trial court’s determination of whether the summary judgment is appropriate, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Schultz v. *288 Guoth, supra; Johnson v. Super 8 Lodge-Shreveport, 47,081 (La.App. 2 Cir. 4/25/12), 92 So.3d 519.

Discussion: Intentional Tort Exception

• By his first assignment of error, Sibert urges the court erred in granting summary judgment in light of the intentional tort claim. He cites the allegations of intentional tort in his first and second supplemental and amending petitions, and argues that Heckmann’s discovery documents, produced after judgment, was rendered and thus not part of the record, confirm these allegations. Specifically, they show that during the design phase of the project, Heckmann advised HDR that the pipeline would be |fiused to transport flammable drilling fluids, but HDR never conveyed this information to Wicker or its employees during the installation phase. He contends these facts take the case outside the immunity of R.S. 23:1032.
HDR responds that Sibert offered only bare allegations of intentional tort, and weak ones at that, falling far below the standard of proving that the injury must be “inevitable” or “incapable of failing.” Reeves v. Structural Preservation Sys. Inc., 98-1795 (La.3/12/99), 731 So.2d 208; Carrier v. Grey Wolf Drilling Co., 2000-1335 (La.1/17/01), 776 So.2d 439.
Under Louisiana law, workers’ compensation is the exclusive remedy that an employee may assert against his employer, statutory employer or fellow employees for work-related injury, unless he was the victim of an intentional act. La. R.S. 23:1032 B; Reeves v. Structural Preservation, supra. Intentional act requires proof that the actor either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knew that the result was substantially certain to follow from his conduct, whatever his desire may be as to that result. Miller v. Sattler Supp. Co., 2013-2558 (La.1/27/14), 132 So.3d 386, and citations therein. Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued, does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers’ compensation. Miller v. Sattler Supp. Co., supra. “Substantially certain to follow” requires more than a reasonable probability that an injury will occur and “certain” has been defined to mean “inevitable” or “incapable of failing.” Id. The employer’s mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or |7wanton conduct by an employer constitute intentional wrongdoing. Id.; Batiste v. Bayou Steel Corp., 2010-1561 (La.10/1/10), 45 So.3d 167.
Sibert’s first supplemental and amended petition alleged:
• “[A]n employee of HDR, believed to be Ray Richards, instructed Wicker employees to bend the pipe against the manufacturer’s instructions. * * * The mandatory instruction given by Ray Richard [sic] to Wicker employees were [sic ] intentional.”
• “Before the accident, a Wicker employee whose job involved ensuring adequate safety measures were being provided and ensuring compliance with OSHA and other laws/regulations, took a sample of the pipeline contents after ⅜ * * HDR and Heckmann refused to provide an ‘MSDS’ safety sheet on the pipeline contents. Upon information and belief, * * * HDR employee, Ray Richards, or another supervising employee of HDR, specifically instructed Wicker’s safety person not to test the contents of the sample and took the sample from Wicker employees and dumped it out to prevent testing of the sample for harmful and *289 dangerous substances. Thus, upon information and belief, HDR, Heck-mann, or both of them, knew that the pipeline contained dangerous substances in addition to the saltwater being transported [and] likely contained natural gas and other flammable drilling fluids[.]”
• “The ⅜ ⅜ * acts of HDR, Heckmann, or both of them, were intentional, and done with full knowledge and conscious indifference to the safety of [Si-bert.] HDR, Heckmann, or both of them, knew that a fireball and explosion could result with substantial certainty when the blowtorch was used to perform repairs and that serious burns to [Sibert] were also substantially certain to occur.” (emphasis added)
In opposition to the motion for summary judgment, Sibert filed HDR’s accident investigation report, which stated:
• “The Wicker employees made the decided [sic ] to heat up a connection of the pipe assembly using a torch.”
• “The cause of the accident was the use of a torch at a pipeline connection that is carrying petroleum byproducts.”
• “The workers had been working for over 16 hours and it was at night. Plus they had not schedule [sic ] to do this work.”
• “The Wicker employees failed to identify the danger of | ^flammable gas in the pipeline and thus did not take proper precautions.”
Sibert correctly shows that the judgment did not expressly address his claim of an intentional act. On de novo review of the grant of summary judgment, however, we find that Sibert has not presented facts sufficient to create a genuine issue of material fact for trial. Allegations of an intentional act, no matter how strong, do not create a genuine issue of fact for trial. Batiste v. Bayou Steel Corp., supra; Smith v. Tanner Heavy Equip. Co., 2001-0886 (La.6/15/01), 790 So.2d 615. Taken at face value, Sibert’s allegations establish only that HDR knew the situation was dangerous and highly probable to result in injury; this does not meet the substantial certainty standard. Batiste v. Bayou Steel Corp., supra; Armstead v. Schwegmann Giant Super Markets Inc., 92-0594 (La.App. 4 Cir. 4/28/93), 618 So.2d 1140, writ denied, 93-2011 (La.11/5/93), 629 So.2d 347. Even if the allegations establish reckless or wanton conduct by the employer, this does not constitute intentional wrongdoing. Batiste v. Bayou Steel Corp., supra; Armstead v. Schwegmann, supra. The only summary judgment evidence before the court, HDR’s accident report, does not even support the claim that HDR’s employees instructed Wicker’s employees to use the torch. On this record, we find the district court did not err in granting summary judgment on the intentional tort exclusion.
Sibert also contends that the allegations of his second supplemental and amended petition created genuine issues of material fact as to the intentional tort claim. Of course, this document was filed after judgment was rendered and played no part in the district court’s consideration. It IflSlightly rephrases the original claim (from stating that HDR “knew that a fireball and explosion could result with substantial certainty” to HDR “should have known that serious burn injuries to [Si-bert] were also substantially certain to occur”) but still does not establish intentional wrongdoing or an outcome that was incapable of failing. Batiste v. Bayou Steel Corp., supra; Jasmin v. HNV Cent. Riverfront Corp., 94-1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, writ denied, 94-2445 (La.12/9/94), 647 So.2d 1110. This assignment of error lacks merit.

*290
Statutory Employment Status

By his second assignment, Sibert urges the court erred in granting summary judgment because of genuine issues of material fact whether the work being performed at the time of the accident was outside the scope of the two contracts. He argues that the two-contract theory does not fit these facts. The general contract was for “design” and “construction” involving the “replacement” of the pipeline, while the subcontract was not for design but merely to “furnish and install” material and equipment, with no provision for continuing maintenance after installation or repairs due to defective workmanship of others. He also contends that it is unclear why the repairs were needed. He concedes the existence of an April 14, 2012, change order whereby Wicker agreed to pursue a claim with its own insurance provider for certain repair work arising about one week before Sibert’s accident; however, he argues extensively that it is not probative as it does not admit that repair work was part of the subcontract, HDR wrote it, and it was not properly attached to the motion for summary judgment. He shows that the party claiming immunity has the burden of proving it, Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188; he suggests that the incongruity between the two contracts, and the inconclusiveness of the change order, come nowhere near satisfying HDR’s burden.
HDR responds that the two-contract theory perfectly fits the facts, citing the definition of a principal in La. R.S. 23:1032 A(2) and that of statutory employment in La. R.S. 23:1061 A(2). HDR argues that the subcontract obligated Wicker to “perform a portion of the [general] contract,” thus making HDR a principal and immune from tort liability. HDR shows that the subcontract contained a specific warranty provision requiring Wicker to correct, for one year after acceptance, any defective work at its own cost, and the change order was merely an expression of warranty. Finally, HDR reiterates that courts have repeatedly found that a general contractor is the statutory employer of a subcontractor’s injured employee, immune from tort liability. Bradford v. Village Ins. Co., supra; Freeman v. Moss Well Serv., 614 So.2d 784 (La.App. 2 Cir.), writ denied, 618 So.2d 413 (1993); Legros v. Norcen Exploration Inc., 583 So.2d 859 (La.App. 1 Cir.), writ denied, 588 So.2d 101 (1991); Liles v. Riblet Prods. of La., 363 F.Supp. 358 (W.D.La.1973), aff'd, 509 F.2d 804 (5 Cir.1975), and other cases.
Except for intentional acts, the rights and remedies of the workers’ compensation law for work-related injuries “shall be exclusive of all other rights, remedies and claims for damages[.]” La. R.S. 23:1032 A(l)(a). The remedy of workers’ compensation is “exclusive of all claims, including any claims that might arise against his employer, or any principal * * * of such employer or principal under any dual capacity or doctrine.” La. R.S. |u23:2032 A(l)(b). A “principal” or “statutory employer” is any person who undertakes to carry out any work which is part of his trade, business or occupation by means of a contract with another (the “trade, business or occupation” defense), or any person who has contracted to perform work and sublets any portion to another (the “two-contract” theory). La. R.S. 23:1061 A(l); Allen v. State, 2002-1072 (La.4/9/03), 842 So.2d 373; Freeman v. Moss Well Serv., supra. A statutory employer relationship “shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee’s immediate employer.” La. R.S. 23:1061 A(2).
*291 The general contract between Heckmann, as owner, and HDR, as contractor, provided:
• “The following scope of work has been developed for the replacement of Phase 3 Heckmann Pipeline. Phase 3 in this Scope of Work includes the replacement of the existing Heckmann pipeline upstream of Bethlehem Booster Pump Station.”
• “Contractor agrees to furnish all supervision, labor, tools, equipment, materials and supplies necessary to perform the following performed work on a turn-key basis[.]”
HDR then subcontracted a portion of the work to Wicker, identified as the subcontractor, who agreed 'to furnish “all supervision, labor, tools, equipment, materials, and supplies necessary to perform, and to perform the following described work, * * * in accordance with the terms and conditions of the [general] contract and this Subcontract^]”
From these provisions, we find that services or work provided by the immediate employer, Wicker, were included in the contract between the | ^principal, Heck-mann, and “any person or entity other than the employee’s immediate employer,” the general contractor, HDR. This makes HDR a principal under R.S. 23:1061 A(2). We also find that HDR “contracted to perform work and sublet[ ] any portion to another,” Wicker, making HDR a principal under R.S. 23:1061 A(l). The district court did not err in finding that HDR was a principal or statutory employer of Sibert’s and thus entitled to the immunity of R.S. 23:1032 A. This finding is consistent with the jurisprudence holding that a general construction contractor is the statutory employer of a subcontractor’s injured employee, or an independent contractor’s injured employee, and immune from tort liability. Naiman v. Goldsberry Operating Co., 43,266 (La.App. 2 Cir. 6/11/08), 987 So.2d 326; Freeman v. Moss Well Serv., supra; Legros v. Norcen Exploration, supra; Liles v. Riblet Prods. of La., supra. Moreover, aside from allegations and argument, Sibert has not offered any summary judgment evidence to show that the work being performed when he was injured was beyond the scope of the general contract and subcontract. Both contracts provided for a one-year warranty, during which this accident occurred, as well as for change orders. These contracts and this accident meet the statutory requirements for proving that HDR was Sibert’s statutory employer. This assignment or error lacks merit.

Motion for Continuance

By his third assignment of error, Sibert urges the court erred in denying his motion for continuance. He cites La. C.C.P. art. 966 C(l)’s provision for “adequate discovery,” asserting he was not afforded the opportunity to depose any witnesses employed by HDR or the other | tsdefendants, complete written discovery of other defendants, and adequately review the 6,300 pages of highly technical discovery produced by HDR less than one month before the hearing. He asks this court to reverse and remand for adequate discovery.
A defendant’s motion for summary judgment may be made at any time. La. C.C.P. art. 966 A(l). The trial court has the discretion to render summary judgment, if appropriate, or to allow further discovery. The parties must be given the opportunity to conduct “adequate discovery” to present their claims. La. C.C.P. art. 966 C(l). However, there is no absolute right to delay action on a motion for summary judgment until discovery is complete. Simoneaux v. E.I. du Pont de Nemours & Co., 483 So.2d 908 (La.1986); Southern Indus. Contrs. v. Western Builders of Amarillo Inc., 45,779 (La.App. 2 Cir. *292 12/15/10), 56 So.3d 307. The only limit to the trial court’s discretion is that the parties must be given a fair opportunity to present their claims. Simoneaux v. E.I. du Pont, supra; Crockett v. Therral Story Well Serv. Inc., 45,716 (La.App. 2 Cir. 1/5/11), 57 So.2d 355, writ not cons., 2011-0263 (La.3/25/11), 61 So.3d 650.
The district court correctly stated that the accident had occurred over a year (roughly 16 months) earlier and the motion for summary judgment had been pending for about four months. This time frame, though not expansive, seems adequate in that the general contract and subcontract comprise just 22 pages, and the operative passages defining the scope of work and warranty, only a few paragraphs. In Hardin Compounding Pharmacy v. Progressive Bank, 48,397 (La.App. 2 Cir. 9/25/13), 125 So.3d 493, writ denied, 2013-2517 (La.1/27/14), 131 So.3d 60, the court found that a four-month delay [ 14between motion and hearing for summary judgment was adequate for the plaintiff to produce at least a scintilla of evidence, admissible under La. C.C.P. art. 967, of the difficult issue of fraudulent collusion. Here, the same four-month period was adequate for the plaintiff to produce one scintilla of evidence of intentional act. This assignment of error lacks merit.

Conclusion

For the reasons assigned, the judgment is affirmed. All costs are to be paid by the appellants, Jason Dane and Tia Sibert.
AFFIRMED.