HOLDRIDGE, J.
The plaintiff, Leroy Mitchell, appeals a trial court judgment granting summary judgment in favor of Williams Olefins, L.L.C., (defendant) and dismissing his claim with prejudice. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL HISTORY
This litigation arises out of a June 13, 2013 chemical explosion at the Williams Olefins chemical plant near Geismar, Louisiana that is located in both Iberville and Ascension Parishes. The explosion occurred in connection with the production of propylene in the fractionation area of the plant. Specifically, a reboiler[1] had been improperly cut off from a pressure-relief vent, causing it to over-pressurize and rupture. As a result of the explosion, numerous plaintiffs filed suit against various defendants for the injuries they sustained.[2]
In the instant matter, the plaintiff was employed by Chicago Bridge and Iron Company (CB & I) as a pipefitter at the defendant's facility at the time of the chemical explosion. The plaintiff was "on top of a scaffold approximately 10 feet off the ground when the chemical explosion occurred." The plaintiff allegedly "suffered severe and debilitating injuries when an area of [the defendant's] refinery known as the propylene fractionation area exploded." On June 12, 2014, the plaintiff filed a petition for damages against the defendant[3] for the injuries he sustained. The plaintiff alleged in his original petition that that the defendant committed an intentional tort. Specifically, the plaintiff argued that the defendant failed to properly maintain, repair, and improve its pipeline and equipment on its premises, resulting in the explosion. On May 3, 2016, the plaintiff filed *1136 an amended petition for damages against the defendant that clarified his intentional tort claim.[4] The amended petition stated, in pertinent part:
1.33. ... [The defendant] owned and operated the subject refinery, and it employed the workers at the refinery. [The defendant] controlled the piping from which the propylene leaked on the date in question. [The defendant had] known for years that [EA-425B] was substantially certain and likely to over pressurize. [The defendant's] management ignored that risk over [sic] and over. As a result, eventually [EA-425B] over pressurized and exploded.
On January 19, 2016, the defendant filed a motion for summary judgment to dismiss the plaintiff's intentional tort claim on the grounds that there remained no genuine issue of material fact and that it was entitled to judgment as a matter of law.[5] The defendant argued that the plaintiff could not satisfy his burden of proving his claim for an intentional tort because "[t]he facts show[ed] that the June 13, 2013 incident was a tragic accident" that was caused by the over-pressurization of an out-of-service reboiler that ruptured. Specifically, the defendant argued that the chemical explosion occurred as a result of three separate and distinct events occurring unexpectedly and simultaneously. The defendant submitted the affidavit of Larry Bayer, the Director of Operations and Technical Services for the defendant's facility, to explain the occurrence of the unexpected events. In his affidavit, Mr. Bayer stated, in pertinent part:
4. The over-pressurization of the out-of-service reboiler was caused by the union of three separate and distinct events occurring simultaneously: (1) the out-of-service reboiler (EA-425B) unexpectedly contained liquid propane/propylene despite having its process valves closed; (2) a valve was improperly opened that allowed heated quench water to flow into the out-of-service reboiler; and (3) the pressure relief path for the out-of-service reboiler [EA-425B] was blocked due to the process inlet and outlet valves being closed. All three of these factors had to occur simultaneously for this accident to occur. If any one of them had not happened, the fire would not have occurred. The simultaneous occurrence of three events like this had never occurred in the history of the Geismar facility.
****
8. In July, 2006, the [defendant] ... began a revalidation of the Process Hazard Analysis ("PHA") Study for various process areas of the plant, one of which included the area where the June 13, 2013 fire eventually occurred. These PHA revalidation studies are part of an on-going process safety management plan that the [defendant's] management team implements at the [defendant's] facility. ... The study ... contain[ed] numerous recommendations ... [and] [t]he specific recommendation at issue here is Recommendation 18, which state[d]: "Consider locking open at least one of the manual valves associated with each *1137 of the propylene fractionator reboilers (EA-425 A/B) so that the relief valves on top of the propylene fractionator can provide thermal relief protection for these reboilers."
Thus, the defendant argued that the unusual, simultaneous occurrence of the three factors solely caused the chemical explosion. The defendant stated as to the first factor, the defendant's investigating committee was unable to determine the precise cause of the presence of the liquid hydrocarbons in the out-of-service reboiler. For the second factor, "the quench water flow valve to the out-of-service reboiler was improperly opened just minutes before the reboiler ruptured. It was opened by an operations department employee who was trouble-shooting quench water problems through the in-service reboiler." For the third factor, the defendant argued that Mr. Bayer's affidavit evidences that the pressure relief path was blocked for the out-of-service reboiler because a PHA recommendation by the defendant's management team was inadvertently implemented in a different manner than recommended. However, this error in implementation was not detected until the chemical explosion occurred three years later.
In response, the plaintiff filed a memorandum in opposition to the defendant's motion, arguing that the defendant knew with substantial certainty of the dangerous condition associated with the out-of-service reboiler (EA-425B), but failed to address the problem. In support of his memorandum, the plaintiff attached exhibits, which included the expert affidavits of Gregg S. Perkin, an independent engineer consultant employed by Engineering Partners International, LLC, and Greg McCormack, an engineer consultant. The experts' affidavits provided the history of the reboilers' modifications at the defendant's facility. Mr. Perkin stated in his affidavit that around 2001, block valves were added to the inlet and outlet process flow lines for the reboilers. According to Mr. Perkin, this modification left the reboilers in an unsafe condition because they were isolated from the pressure relief system of the defendant's facility, a hazard that would substantially result in over-pressurization.
Additionally, Mr. Perkin stated in his affidavit that the employees of the defendant knew the substantial risk of over pressurization of the reboilers because the defendant was warned multiple times that pressure relief was needed to the reboilers or they would fail. He stated that in 2006 the defendant underwent a PHA[6] for safety management at its facility. The PHA provided a recommendation to the defendant that it needed to consider locking open at least one of the manual valves associated with each of the reboilers, so that the relief valves on top of the propylene fractionator could provide thermal relief protection for the reboilers. Mr. Perkin further stated in his affidavit that in 2008, CDI Engineering Solutions was hired by the defendant to perform a pressure relief valve study on the facility. The study concluded, in pertinent part:
There [were] block valves at the inlet and outlet to the shell side of the EA-425 A/B. Because those valves [were] not [car-sealed open], SV-421QA/QA w[ould] not provide overpressure protection to the shell side of the reboilers in the event of a fire or in the event of liquid expanding/vaporizing due to heat input from the hot side. Unless these valves [were] car[-] sealed open, additional *1138 overpressure protection w[ould] be needed for the shell side of EA-425A/B.[7]
The plaintiffs further argued that the defendant was aware of the hazardous condition because in 2010 the defendant reported that it car-sealed open the process outlet valves for both reboilers. However, in 2012 while updating the facility's piping and instrumentation diagram (P & ID),[8] an employee of the defendant noted that one of the reboilers (EA-425B) was not connected to the pressure relief system. The employee noted on the P & ID revision approval form that only the in-service reboiler (EA-425A) was car-sealed open. This form was approved by the defendant's management,[9] acknowledging that one of the reboilers (EA-425B) was not car-sealed open as recommended. Thus, the plaintiff averred that the defendant knew that the out-of-service reboiler was not car-sealed open despite the numerous warnings it was given that one of the reboilers (EA-425B) was not connected to the pressure relief system. As a result, the plaintiff argued that the defendant was aware of the hazardous condition of the reboilers for years, but never did anything about it, resulting in the chemical explosion.
In sum, the plaintiff argued that the defendant was aware of the dangerous condition as early as 2001, and unquestionably aware of the dangerous condition by 2006 after the PHA. Specifically, the plaintiff argued that in 2006, after the defendant underwent the PHA for safety management at its facility, the defendant recognized that the reboilers lacked the required pressure-relief outlet, and recommendations were made to it to correct the problem throughout the years. However, the plaintiff argued that the defendant ignored the recommendations ultimately resulting in the chemical explosion.
In response, the defendant filed a reply memorandum, objecting to portions of the plaintiff's experts' affidavits stating that they contained "inadmissible opinions as to ultimate issues of subjective knowledge and intent" regarding the chemical explosion. The defendant argued that subjective knowledge and intent were beyond the scope of appropriate expert testimony pursuant to La. C.E. art. 702. The defendant further argued that contrary to the plaintiff's assertion, the undisputed facts showed that the chemical explosion was an accident caused by human error. The defendant stated that the record revealed that it intended to implement the PHA recommendation to car-seal open both reboilers, but a field-level mistake was made when implemented.
On May 24, 2016, the trial court held a hearing on the defendant's motion for summary judgment. Before hearing arguments on the merits, the trial court sustained the defendant's objection, striking portions of the plaintiff's experts' affidavits pursuant to La. C.C.P. art. 967 and La. C.E. art. 702. The plaintiff did not contemporaneously object to the trial court's ruling.[10]
*1139 The defendant argued that in December of 2008, the defendant's management team implemented the 2006 PHA recommendation and it assigned this task to the operations department to implement. In January of 2010, the operations department reported that the 2006 PHA recommendation had been implemented. The defendant argued that it discovered that a mistake was made during the implementation of the 2006 PHA recommendation. This mistake included failing to car-seal open the out-of-service reboiler (EA-425B). The defendant argued that although it made a mistake, it did not fail to address the hazardous condition of the reboilers, as Mr. Bayer's affidavit affirmed that the defendant was under the impression that it had addressed the reboiler pressure-relief problem by January 2010.
At the conclusion of the hearing, the trial court took the matter under advisement. On July 11, 2016, the trial court signed a motion for summary judgment in favor of the defendant and the plaintiff's claim was dismissed with prejudice. The trial court provided reasons for judgment on July 12, 2016. Thereafter, the plaintiff appealed assigning as error: (1) that the trial court erred by not allowing any of the plaintiffs to conduct adequate discovery in this case; (2) that the trial court erred by granting the defendant's motion for summary judgment; and (3) that the trial court erred by failing to follow the Law of the Case.
As to the plaintiff's first and third assignments of error, we find that they have no merit as they have both been raised before this court for the first time on appeal. The well-settled jurisprudence of this court establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the trial court has not addressed. Council of City of New Orleans v. Washington, 2009-1067 (La. 5/29/09), 9 So.3d 854, 856.
STANDARD OF REVIEW
Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750.
The initial burden of proof is on the mover. If the mover will not bear the burden of proof at trial, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support that is sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, *1140 there is no need for trial on that issue and summary judgment is appropriate. Larson v. XYZ Insurance Company, 2016-0745 (La. 5/3/17), 226 So.3d 412, 416.
DISCUSSION
Intentional Tort
The plaintiff assigns as error that the trial court granted the defendant's motion for summary judgment because the defendant intentionally desired to bring about his injuries since it knew with substantial certainty that a chemical explosion would occur. The plaintiff argues that the defendant had notice that the out-of-service reboiler (EA-425B) was not car-sealed open and did not have pressure relief, resulting in the reboiler failing and causing serious injuries. We must first examine whether the plaintiff met his burden of proving an intentional tort against the defendant under La. R.S. 23:1032(B). To meet his burden, the plaintiff must prove that the defendant: (1) consciously desired the physical result of its act, whatever the likelihood of that result happening from its conduct, or (2) knew that the result is substantially certain to follow from its conduct, whatever its desire may be as to that result. Miller v. Sattler Supply Co., Inc., 2013-2558 (La. 1/27/14), 132 So.3d 386, 387 ; Bazley v. Tortorich, 397 So.2d 475, 481 (La. 1981).
The plaintiff does not allege that the defendant consciously desired to cause him harm.[11] Rather, he asserts that his injuries were substantially certain to follow from the defendant's conduct. See Batiste v. Bayou Steel Corp., 2010-1561 (La. 10/1/10), 45 So.3d 167, 168. The plaintiff relies on evidence indicating that the out-of-service reboiler (EA-425B) was hazardous for many years. The plaintiff argues that the defendant was aware that the out-of-service reboiler (EA-425B) was a hazard and that substantial injuries were likely to occur as early as 2006 when the defendant was notified after the PHA that the reboilers did not have the proper pressure relief. The plaintiff further argues that the experts' affidavits provide evidence that the defendant was aware for years of the hazardous condition of the reboilers. Specifically, Gregg S. Perkin and Greg McCormack both stated in their affidavits that the out-of-service reboiler (EA-425B) was placed in an unsafe operating mode that was severe and could cause death or injury. The experts stated that as early as 2006, the hazardous condition of not having the reboilers car-sealed open was identified and recommendations were made to the defendant throughout the years to avoid the rupturing of the out-of-service reboiler (EA-425B) since it was not connected to the pressure relief system. The experts found that by 2010, the out-of-service reboiler (EA-425B) was not car-sealed open despite the defendant's management being aware of the hazard and risk associated with a blocked reboiler.
Additionally, the plaintiff relies on the P & ID revision approval form that was presented to the defendant's management to argue that the defendant's management was aware of the substantial risk associated with having the out-of-service reboiler (EA-425B) blocked. The plaintiff argues that the P & ID revision approval form evidences that the defendant's management approved for reboiler (EA-425A) to be car-sealed open, but reboiler (EA-425B) remain closed, which eventually led to the out-of-service reboiler being filled with propylene and introduced to heat, and because *1141 there was not a pressure relief system in place, the reboiler failed.
The defendant counters that it never intended to injure the plaintiff and that the chemical explosion was an accident caused by human error. The defendant argues that the Louisiana Supreme Court has made it clear that the intentional tort exception to workers' compensation immunity is reserved only for those cases in which actual intent to cause the specific injury at issue can reasonably be inferred. The defendant admits that it made mistakes, however it did not intentionally desire for the plaintiff to be injured or knew that the chemical explosion was substantially certain to occur.
The defendant further argues that the "substantially certain to follow" requirement mandated by La. R.S. 23:1032(B) requires more than a reasonable probability that an injury will occur and certain has been defined to mean "inevitable" or "incapable of failing." See Sibert v. National Oilwell Varco, L.P., 48,789 (La. App. 2 Cir. 2/26/14), 136 So.3d 283, 288. The defendant's mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing. Id. In support of its argument, the defendant relies on Danos v. Boh Bros. Const. Co., LLC, 2013-2605 (La. 2/7/14), 132 So.3d 958, 960, wherein an employee was severely injured while using a cutting saw at work after he was directed by his employer to use the saw to cut a pipe flat on the ground. The Supreme Court reversed the lower court's ruling denying summary judgment and stated "[b]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." Danos, 132 So.3d at 959quoting Reeves v. Structural Preservation Systems, 98-1795 (La. 3/12/99), 731 So.2d 208, 213. The Supreme Court emphasized that mere knowledge that a procedure is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the substantial certainty requirement. Id.; see also Simoneaux v. Excel Group, LLC, 2006-1050 (La. 9/1/06), 936 So.2d 1246, 1248 (wherein the Supreme Court found that an employer's actions in providing poor working conditions was potentially negligent but was not intentional in causing the plaintiff's injuries.)
After a de novo review of the record, it is clear that the defendant's management was aware that the blocked reboiler was a hazard, but it is not evident that they were substantially certain that the chemical explosion was to occur from that hazard. The record reveals that the reboiler had been in a potentially hazardous condition since 2001 and had never failed or hurt anyone before the explosion in 2013. Mr. Bayer's affidavit reveals that the reboiler being blocked was only one of the three simultaneous factors that led to the explosion. The unexpected presence of the liquid hydrocarbon in the out-of-service reboiler and the improper introduction of the heated water simultaneously caused the chemical explosion. Thus, the evidence does not show that the defendant knew with substantial certainty that the blocked reboiler, which had been filled with nitrogen, would be filed with propylene or that it would be heated, ultimately causing the chemical explosion.
Considering all of the evidence, which was not objected to in the plaintiff's opposition to the motion for summary judgment, it does not appear that the chemical explosion rises to the level of an intentional tort by the defendant. Jurisprudence *1142 shows that despite the fact that the defendant's management was aware of the hazardous condition, that alone does not equate to substantial certainty under La. R.S. 23:1032(B) and instead falls within the range of negligent acts that are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1020.1, et seq. (LWCA). See Miller v. Sattler Supply Co., Inc., 2013-2558 (La. 1/27/14), 132 So.3d 386, 388 ; Sibert, 136 So.3d at 288 ; Robinson v. North American Salt Co., 2002-1869 (La. App. 1 Cir. 6/27/03), 865 So.2d 98, 105, writ denied, 2003-2581 (La. 11/26/03), 860 So.2d 1139. As the Louisiana Supreme Court has stated, the mere knowledge that a procedure is dangerous or that a machine's use creates a high probability that someone will eventually be injured is not sufficient to meet the substantial certainty requirement mandated by La. R.S. 23:1032(B). See Batiste, 45 So.3d at 168-69. Thus, believing that someone may, or even probably will eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation. Gardner v. Craft, 48,861 (La. App. 2 Cir. 3/5/14), 137 So.3d 69, 75, writ denied, 2014-0711 (La. 5/16/14), 139 So.3d 1029.
While we recognize that the out-of-service reboiler (EA-425B) was in a hazardous condition on the day of the chemical explosion, resulting in the plaintiff sustaining injuries, jurisprudence is clear that it cannot reasonably be said that the defendant was substantially certain that the plaintiff would be injured. Our courts have narrowly construed the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment. Reeves, 731 So.2d at 211. Thus, the defendant's conduct does not rise to the level of an intentional act so as to provide the plaintiff with a remedy over that provided by the LWCA. See Id. Accordingly, we conclude that the plaintiff failed to show that the defendant knew with substantial certainty that the chemical explosion was to occur, causing harm to the plaintiff pursuant to La. R.S. 23:1032(B). Therefore, the trial court's judgment is affirmed and this assignment of error has no merit.
CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. Costs of this appeal are assessed to the plaintiff, Leroy Mitchell.
AFFIRMED.

A reboiler is a pressure vessel that operates as a heat exchanger to heat a process fluid to separate the gases from the heavier components.

The trial court consolidated the various suits for discovery purposes to division "D" of the trial court to be joined with the suit captioned "Travis Higgins v. Williams Energy Partners, L.P., et al., Suit No. 109,244 ."[2] The consolidated cases consisted of Artie Hudson and Jeffery Wells, et al v. Williams Olefins Development, L.L.C., et al, Suit No. 109,301 and Leroy Mitchell v. Williams Companies, Inc., et al, Suit No. 110,285. We note that while La. C.C.P. art. 1561 provides that two or more actions may be consolidated for trial, there is no provision that allows cases to be consolidated for discovery purposes. See Boh v. James Indus. Contractors, L.L.C., 2003-1211 (La. App. 4 Cir. 2/11/04), 868 So.2d 180, 186, writ denied sub nom. Boh v. JamesIndus. Contractors, 2004-0456 (La. 3/5/04), 869 So.2d 801.

The plaintiff named several other defendants in his petition for damages who were dismissed from the suit or their claims are not being contested in the instant matter.

An intentional tort does not have to be plead with any specificity. See Mayer v. Valentine Sugars, Inc., 444 So.2d 618, 620 (La. 1984).

We note that the Louisiana Code of Civil Procedure was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 of the 2015 La. Acts, No. 422, provides that: "[t]he provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act." Here, the filing of the motion for summary judgment was filed after the effective date of 2015 La. Acts, No. 422. Thus, the new version of La. C.C.P. art. 966 applies to the instant matter.

The PHA was attached as an exhibit in the plaintiff's memorandum in opposition to the defendant's motion.

A car seal is a device that is placed on a valve in the designated position as an administrative control to keep the valve in the designated position.

The piping and instrumentation diagram is a drawing that shows what is installed in the field, all of the piping and equipment, and any instrumentation and electrical components.

The defendant's management who approved the P & ID included: Larry Bayer (plant manager), Parker Tucker (operational manager), Erick Comeaux (technical manager), Jake Beret (safety manager).

Upon our de novo review, we find no error in the trial court's ruling to strike portions of the plaintiff's expert's affidavits and note that the parties did not raise this issue on appeal.

We note that the defendant produced undisputed testimony establishing that it did not intend to injure the plaintiff or itself.