COUNSEL FOR PLAINTIFF/APPELLANT, SHELLY N. BENJAMIN, J. Michael Daly, Jr.
COUNSEL FOR DEFENDANT/APPELLEE, OCHSNER HOSPITAL, Don S. McKinney, Diana C. Surprenant, Mary K. Peyton
Panel composed of Judges Susan M. Chehardy, Jude G. Gravois, and Marc E. Johnson
GRAVOIS, J.
In this medical malpractice suit, plaintiff, Shelly Benjamin, appeals a trial court judgment which granted a motion for summary judgment filed by defendant, Ochsner Clinic Foundation[1] (hereinafter "Ochsner"), finding that she failed to bear her burden of proof that Ochsner breached the standard of care when treating her for pelvic fractures. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On November 30, 2012, Shelly Benjamin was involved in a one-car accident and was transported to St. Tammany Hospital for medical care. Thereafter, on December 1, 2012, Ms. Benjamin was transferred to Ochsner Medical Center in Jefferson, Louisiana, where she was treated for, among other things, pelvic fractures. After physical therapy and ambulation, and assessment via x-rays, Ms. Benjamin's physicians determined that no operative treatment would be pursued because her pelvis remained stable. She remained at Ochsner for three weeks until she was transferred back to St. Tammany Hospital for one week of rehab. On January 31, 2013, Ms. Benjamin sought treatment from Dr. Paul Gladden at Tulane Hospital regarding complaints of hip pain. According to Ms. Benjamin, Dr. Gladden advised her that her hip had been dislocated in the accident, but too much time had since passed and nothing could be done to correct her *864 anatomical abnormality. She was told that more damage was caused when she was allowed to ambulate on her leg.
Subsequently, on December 23, 2013, Ms. Benjamin filed a medical malpractice claim with the Louisiana Division of Administration, Patient's Compensation Fund, against "Ochsner Hospital and its employed physicians," alleging that Ochsner breached the applicable standard of care and caused Ms. Benjamin's damages. On February 11, 2016, the medical review panel issued a unanimous opinion finding that Ochsner did not breach the applicable standard of care.
On May 2, 2016, Ms. Benjamin filed this civil suit against Ochsner for the alleged negligent treatment of her pelvic fractures by its employed physicians and/or staff. Nearly two years later, on March 27, 2018, Ochsner filed a motion for summary judgment seeking to have the claims against it dismissed. Ochsner asserted that Ms. Benjamin could not prevail at trial because she could not offer expert testimony to meet her burden of proof against Ochsner. In response to discovery propounded by Ochsner seeking information as to Ms. Benjamin's expert, Ms. Benjamin named her treating physician, Dr. Gladden, as her expert witness. However, Ochsner asserted in its motion for summary judgment that in Dr. Gladden's deposition, he did not opine as to any breach in the standard of care, but rather opined that it was a judgment call as to whether to treat Ms. Benjamin operatively or non-operatively. In support of its motion, Ochsner introduced the opinion of the medical review panel that had previously considered Ms. Benjamin's claims and had found no breach in the standard of care. Ochsner also introduced the affidavit of Dr. Robert Shackleton, an orthopedic surgeon and member of the medical review panel, who opined that although Dr. Gladden recommended a different treatment approach from Ochsner's, both treatment approaches were within the standard of care and both treatment approaches had their own risks.
In response, Ms. Benjamin filed a motion to continue Ochsner's motion for summary judgment and/or opposition to summary judgment. In her response, Ms. Benjamin argued that she had produced an expert in this matter - Dr. Gladden. She argued that Dr. Gladden opined that Ochsner breached the applicable standard of care by allowing Ms. Benjamin to ambulate, thus applying pressure to her hip, and that this expert testimony is sufficient to deny Ochsner's motion for summary judgment. She further argued that she has always contended that the Ochsner staff violated the instructions given by the treating physicians by allowing Ms. Benjamin to ambulate and place too much weight on her hip. Though given a list of numerous nurses who were involved in Ms. Benjamin's overall care, Ms. Benjamin continuously requested the specific names of the nursing staff who assisted her when ambulating. Without knowing the identity of these individuals and without taking their depositions, she argued that this matter could not move forward. Therefore, Ms. Benjamin requested that the motion for summary judgment be denied and/or continued until such time that these depositions could be taken.
In response, the trial court continued the hearing on the motion for summary judgment from May 7, 2018 to July 3, 2018. After the hearing on July 3, 2018, the trial court rendered a written judgment on July 31, 2018, granting Ochsner's motion for summary judgment and dismissing Ms. Benjamin's claims with prejudice. In its written reasons for judgment, the trial court found there to be an absence of factual support that Ochsner's conduct fell below the applicable standard of care. The *865 trial court stated that Ms. Benjamin could not offer expert testimony to meet her burden of proof against Ochsner. The trial court found that Ochsner had carried its burden of proof as required by law. This appeal followed.
LAW AND ANALYSIS
On appeal, Ms. Benjamin first argues that the trial court erred in granting Ochsner's motion for summary judgment because she identified an expert, Dr. Gladden, who testified that if in fact Ms. Benjamin was allowed to put too much weight on her leg, this could cause her damages and would constitute a breach of the applicable standard of care.
After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Appellate courts review summary judgments de novo using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Pizani v. Progressive Ins. Co ., 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. A de novo review or an appeal de novo is an appeal in which the appellate court uses the trial court's record, but reviews the evidence and law without deference to the trial court's rulings. Sarasino v. State Through Department of Public Safety and Corrections , 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 928. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Muller v. Carrier Corp. , 07-770 (La. App. 5 Cir. 4/15/08), 984 So.2d 883, 885.
In a medical malpractice action, such as the instant case, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. La. R.S. 9:2794 ; Pfiffner v. Correa , 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228. Therefore, unless the case involves some obvious act from which a lay person can infer negligence, such as amputating the wrong limb or leaving a sponge in a patient's body, the absence of expert testimony as to any of the essential elements of the plaintiff's malpractice claim will preclude the imposition of liability. Gonzales v. Ochsner Clinic Found ., 14-873 (La. App. 5 Cir. 5/14/15), 170 So.3d 1099, 1103, citing Samaha v. Rau , 07-1726 (La. 2/26/08), 977 So.2d 880 and Silvain v. Saer , 09-1103 (La. App. 5 Cir. 10/12/10), 49 So.3d 516. This requirement of producing expert medical testimony *866 is especially apt when the defendant has filed a motion for summary judgment and supported such motion with expert opinion evidence that the treatment met the applicable standard of care. Britt v. Taylor , 37,378 (La. App. 2 Cir. 8/20/03), 852 So.2d 1128, 1133.
Ms. Benjamin's medical records, attached to Ochsner's motion for summary judgment and filed under seal,[2] indicate that Ms. Benjamin was being treated at Ochsner for pelvic fractures. Her December 4, 2012 treatment plan states that she was to be out of bed and ambulate, and she was to continue working with physical therapy using "TTWB", i.e. , toe touch weight bearing. Films would be ordered of the pelvis after she ambulated, and if there were any changes or if she could not ambulate secondary to extreme pain, operative intervention would be considered. The medical record states that "[a]s of right now, we hope to avoid any surgery." On December 6, 2012, x-rays were ordered to assess the pelvis. The records note that if her pelvis was stable and had not moved, the physicians would feel more comfortable in saying that her pelvis is less likely to shift. If her pelvis moved with ambulation, the physicians noted that they may have to operate to stabilize the pelvis. The medical records of December 7, 2012 indicate that x-rays were reviewed, and the physicians were not going to pursue any operative treatment since her pelvis was stable. The plan was for Ms. Benjamin to continue her current treatment, and they would reassess in two weeks to see how her pelvis looked.
Both parties introduced excerpts from Dr. Gladden's deposition taken on December 9, 2014 in support of their arguments. Dr. Gladden testified that there was a difference in Ms. Benjamin's x-rays taken after the accident and those taken when he treated her. The difference was that the "ring has shifted and healed in a malunited position." He surmised that it got there because it got displaced. Dr. Gladden testified that based on the findings in her films, he would not have allowed Ms. Benjamin to be weight-bearing. He stated that he personally would not have allowed her to ambulate, and instead he might have put her on bed rest and then evaluated her a bit more. He would have likely considered surgery due to the nature of the "sacral fracture on the back." When asked if it would be reasonable to treat a stable pelvic fracture non-operatively, he testified: "Yes, if it's where it should be and it looks like it's going to stay where it should be, it would be very reasonable to not look to do surgery." Regarding the standard of care, it was stated:
Q: Let me ask you this: Although you have opined on what you would do personally, you're not opining on the standard of care, is that true?
A. The standard of care - pelvis injuries are very difficult because the goal is a healed, normally-shaped pelvis. How you get there can either be surgery, which has its own risks, or non-operatively, which has its own risks.
It's not - unfortunately, you can't look at a patient and say, you're going to displace and you're not going to displace. So I tend to be very conservative because I see the things that go poorly sometimes because they usually get sent to me. And so I don't walk a lot of people. I do a lot of pelvic surgery sometimes in an effort to make sure there's not any risk of displacement.
*867 Q. So would it be fair to say then that it's a judgment call?
A. It is.
Finally, Dr. Gladden stated that "most people who have got an orthopedic trauma fellowship and deal with a lot of pelvises" would have been very concerned about stability of Ms. Benjamin's fractures and likely "not weight bear them and made sure it was stable in some way, possible operated on."
Upon review, we do not find that Dr. Gladden's testimony is sufficient to create a genuine issue of material fact. When questioned about the standard of care, Dr. Gladden specifically testified that the decision to treat a pelvic fracture operatively or non-operatively is a judgment call. Though he did testify that he would have treated Ms. Benjamin differently, he does not testify that Ochsner's treatment constituted a breach of the standard of care. Thus, we find that this evidence fails to produce factual support sufficient to establish that Ms. Benjamin will be able to prove at trial the applicable standard of care, a breach thereof, or causation. Accordingly, upon de novo review, we find that Ochsner showed an absence of support for Ms. Benjamin's medical malpractice claim. Thereafter, Ms. Benjamin did not produce factual support in the form of expert testimony needed to support her claims. Accordingly, summary judgment in favor of Ochsner was appropriate.
Ms. Benjamin also argues that the trial court failed to recognize that there are allegations against the staff at Ochsner, specifically, allegations about whether the nursing staff and/or physical therapy staff adhered to the recommendations of the physicians. As such, Ms. Benjamin sought the names of the individuals who provided such care. When she was given a list of over 30 witnesses, she requested that Ochsner narrow down the list so that she could take the depositions of the appropriate individuals; however, this never occurred. Ms. Benjamin contends that the trial court erred in not allowing the depositions to occur prior to ruling on the motion for summary judgment.
A defendant's motion for summary judgment may be made at any time. La. C.C.P. art. 966(A)(1). The trial court has the discretion to render summary judgment, if appropriate, or to allow further discovery. Sibert v. National Oilwell Varco, L.P ., 48,789 (La. App. 2 Cir. 2/26/14), 136 So.3d 283, 291. The parties must be given the opportunity to conduct "adequate discovery" to present their claims. Id . ; La. C.C.P. art. 966(A)(3). However, there is no absolute right to delay action on a motion for summary judgment until discovery is complete. Flowers v. Wal-Mart Stores, Inc. , 12-140 (La. App. 5 Cir. 7/31/12), 99 So.3d 696, 702. The only requirement is that the parties be given a fair opportunity to present their claims, and unless a plaintiff shows probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact. Johnson v. Littleton , 45,323 (La. App. 2 Cir. 5/19/10), 37 So.3d 542, 548. The mere contention of an opponent that he lacks sufficient information to defend a summary judgment motion and that he needs additional time to conduct discovery is insufficient to defeat the motion. Williams v. A Day to Remember Invitations, L.L.C ., 06-757 (La. App. 5 Cir. 3/13/07), 956 So.2d 30, 33.
Ochsner's motion for summary judgment was filed nearly two years after suit was filed in this case. In her opposition to the motion for summary judgment, Ms. Benjamin requested a continuance in order that she may conduct further discovery. In response, the trial court delayed *868 the hearing on the motion by almost two months. Upon review and under the particular facts and circumstances of this case, we find no evidence that Ms. Benjamin has not been afforded a fair opportunity to carry out discovery and present her claims. We find that the trial court did not abuse its wide discretion in considering and ruling on the subject motion for summary judgment without allowing Ms. Benjamin further discovery.
Finally, Ms. Benjamin argues that a genuine issue of material fact remains in this case as to whether the staff at Ochsner failed to comply with the physicians' orders. Ms. Benjamin argues that she was allowed to ambulate and place too much weight on her leg. Further, she argues that the physicians only recommended "toe touch ambulation," and according to Ms. Benjamin's testimony, this did not occur. Thus, based upon her own testimony, Ms. Benjamin argues that a genuine issue of material fact remains precluding summary judgment. Furthermore, she argues that no expert is needed to prove that a failure to comply with physicians' orders is a breach of the standard of care.
Upon review, we find that Ms. Benjamin has failed to provide any factual support or evidence to support her argument that the staff failed to follow the physicians' orders and that material facts are still at issue. Accordingly, we find no merit to this argument.
CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment granting Ochsner's motion for summary judgment and dismissing Ms. Benjamin's claims with prejudice.
AFFIRMED

In her petition for damages, Ms. Benjamin named "Ochsner Hospital" as the only defendant. The suit was answered by the correct entity, "Ochsner Foundation Clinic."

The record on appeal contains only the four pages of Ms. Benjamin's medical records that were attached to Ochsner's motion for summary judgment and admitted at the hearing on the motion.